\*NOT FOR PUBLICATION\*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES & ALLICE MULLEN, | : | |
| | : | Civ. Action No. 12-4913 (FLW) |
| Appellants, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| T.D. BANK, N.A. | : | |
| Appellee. | : | |
| | : | |

**WOLFSON, United States District Judge**:

Appellants Charles and Allice Mullen ("Debtors") appeal from a final decision of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") granting Appellee T.D. Bank's ("T.D.") Motion for Automatic Stay Relief. The issue presented on appeal is whether the Bankruptcy Court erred by giving controlling effect to a Consent Order entered into by the parties over a subsequent confirmed Chapter 13 plan. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C § 158(a)(1). For the reasons that follow, the Court **VACATES** the Bankruptcy Court's Order granting stay relief.

**I.    BACKGROUND**

The following facts are derived from the record below and are not in dispute. Debtors, an elderly couple, turned over their business, Advanced Housemovers Inc., to their son approximately ten years ago. The business entity is situated on the same property as Debtors' home. Having succeeded to his parents' business, the son operated Advanced Housemovers in the same corporate name, but failed to pay significant financial obligations. This failure resulted in various legal actions against the business and Debtors, including their home, under Debtors'

personal guarantees. Specifically, T.D. -- the secured creditor of Debtors' real property, including their home, and business -- initiated a foreclosure action against Debtors' home. As a consequence, Debtors filed for Chapter 13 bankruptcy on September 16, 2010, which stayed, <u>inter alia</u>, T.D.'s foreclosure proceeding against Debtors' home. Despite the automatic stay on Debtor's property, T.D. threatened to continue action against the business, whose assets were purportedly comingled with Debtors' assets. In response, Debtors moved in the Bankruptcy Court to enforce and extend the automatic stay to the assets of the business. Rather than litigate the issues, the parties agreed to a Consent Order ("the Consent Order") on April 13, 2011, which provides:

1. Ninety (90) days of complete stay relief against Debtors and Advanced Housemovers (to 5/31/11);

2. Limited stay relief thereafter to permit continuation of legal proceeding against the corporation and foreclosure against the Debtors but no action to schedule a Sheriff's sale or sale of the business;

3. Debtors shall be afforded the full period of their Chapter 13 plan, to wit: December 31, 2011;

4. If debtors fail to comply with the Chapter 13 plan, TD may apply to the Court to vacate the automatic stay.

<u>See</u> Consent Order dated April 13, 2011. Thereafter, Debtors' Chapter 13 plan was confirmed on June 17, 2011. Unfortunately, Debtors met with difficulty in liquidating their business equipment, and consequently, they proposed a modified Chapter 13 plan ("the Modified Plan") on December 25, 2011. The Modified Plan explicitly provides Debtors until May 31, 2013 to sell their residence, if necessary, to satisfy their obligations to creditors. In February 2012, the Bankruptcy Court confirmed the Modified Plan, without any objections by T.D. or other creditors.

It is undisputed that Debtors made all of the required payments, including adequate protection, under the Modified Plan, and that T.D. accepted those payments. Nonetheless, T.D.

moved to lift the automatic stay on Debtors' property on April 24, 2012, to permit the finalization of foreclosure proceedings against Debtor's home. Debtors opposed that motion and cross-moved to reinstate the automatic stay. When these issues were presented in Debtors' bankruptcy proceeding, the Bankruptcy Court considered Debtors' argument that the Modified Plan controls the obligations of the parties; however, the Bankruptcy Court found that "the modified plan did not change the consent order," (Transcript dated June 25, 2012 at T21:4-5), and held that the provisions of the Consent Order control "for the policy reason that . . . both parties are able to rely upon their agreements, and that the Court absent extraordinary circumstances will not interfere with that deal." (T21:11-15.) Accordingly, the Bankruptcy Court granted T.D.'s request for stay relief as to Debtors' home. Debtors then timely filed the instant appeal.

## II.   STANDARD OF REVIEW

When sitting as an appellate court reviewing a decision of the bankruptcy court, a district court "'review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.'" Reconstituted Comm. of Unsecured Creditors of the United Healthcare Sys. v. State of N.J. DOL, 396 F.3d 247, 249 (3d Cir. 2005) (quoting Interface Group-Nevada v. TWA, 145 F.3d 124, 130-31 (3d Cir. 1998)). Mixed findings of fact and conclusions of law must be separately analyzed, and the applicable standards — "clearly erroneous" or de novo - must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). "An abuse of discretion involves 'a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" Valenti v. Mitchell, 962 F.2d 288,

299 (3d Cir. 1992) (quoting Int'l Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir. 1987)). "The district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013.

In this case, because the Bankruptcy Court was asked to construe the parties' Consent Order and interpret its effect in light of the Modified Plan, this Court will review that determination on a "clearly erroneous" standard.

### III.   DISCUSSION

The dispositive issue on appeal is whether the Consent Order controls the obligations of the parties in light of the Modified Plan.  According to the Bankruptcy Court, the Consent Order was entered into in the context of the secured creditor intending to proceed against its collateral, namely, Debtors' home and the assets of Advanced Housemovers, Inc.   In essence, the Bankruptcy Court explained that the Consent Order was an agreement between the parties that gave Debtors a 90-day period to liquidate the assets of the business to satisfy the debt owed to T.D., during which period Debtors' home and business assets would be afforded complete stay relief.  That 90 day period ended on May 31, 2011. The Consent Order further provided that after May 31, 2011, Debtors would be afforded the full period of their initial Chapter 13 Plan (December 31, 2011) in order to secure a sale of the business equipment and satisfy the terms of the plan. In the event Debtors failed to satisfy their obligations under the Chapter 13 Plan, the Consent Order provided that T.D. may apply to the Court to vacate the automatic stay in all respects.  Declining to give effect to terms of the Modified Plan, the Bankruptcy Court found that Debtors were not able to satisfy their plan in full prior to December 31, 2011, and thus, granted T.D.'s request for relief from the automatic stay, despite the confirmed Modified Plan.

On appeal, Debtors argue that, contrary to the Bankruptcy Court's reasoning, the Modified Plan supersedes the parties' agreement set forth in the Consent Order. T.D. responds by urging this Court to focus on the language of the Consent Order alone, and claims that paragraphs (3) and (4) of the Consent Order make clear that the "full period of the Chapter 13 plan was to expire on December 31, 2011."

With respect to Debtors' home, there is no dispute that the property is under bankruptcy protection. The dispute lies in whether the Modified Plan should give way to the terms of the Consent Order. In that regard, the Bankruptcy Court found that the Consent Order controlled because it was a manifestation of the parties' intentions. However, regardless of the parties' intention at the time when the initial Chapter 13 Plan was in effect, the Modified Plan changed the financial obligations of Debtors and the time period Debtors would be afforded to sell their home, i.e., May 31, 2013. Therefore, the Bankruptcy Court's treatment of the Consent Order in light of the Modified Plan was clearly erroneous.

Indeed, a confirmed Chapter 13 plan must be understood in light of 11 U.S.C. § 1327.[1] Section 1327(a) is a statutory description of the effect of a confirmed plan, or of a confirmed

---

[1] Section 1327 provides that upon confirmation:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan of the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor.
(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

modified plan, and provides that in the absence of fraud, a confirmed plan is binding on debtors and creditors. Moreover, if the modifications are confirmed, the modified plan "becomes the plan," see 11 U.S.C.S. § 1329(b)(2), and § 1327 controls.  Pursuant to that statutory scheme, when the Bankruptcy Court confirmed the Modified Plan, it became the plan which delineated the obligations and responsibilities of Debtors and their creditors.  This is significant because the Consent Order was entered into before the Modified Plan existed, and therefore, the material terms of the Modified Plan, to the extent they are inconsistent with the Consent Order, override the provisions of the Consent Order with respect to Debtors' home.  Specifically, the Consent Order provides that T.D. may apply to the Court to vacate the automatic stay if Debtors fail to comply with the initial Chapter 13 plan, and that no action may be taken by T.D. until December 31, 2011. In contrast, the Modified Plan extends the deadline for the sale of Debtors' business equipment to September 30, 2012, in order to pay Debtors' outstanding financial obligations, and it also provides Debtors until May 31, 2013, to sell their home in the event Debtors are unable to make the appropriate payments to T.D.  Clearly, the Modified Plan extended the period for Debtors to meet all of their obligations until May 31, 2013, from the original date of December 11, 2011.[2]  Importantly, T.D. did not object to the terms of the Modified Plan, nor did it seek revocation for fraud.[3]  To grant T.D.'s request for relief, this Court would have to effectively

---

[2]     The Court questions T.D.'s insistence that the parties intended the December 31, 2011 date to be the date upon which T.D. could apply for stay relief, regardless of any subsequent modified plan. Indeed, the Consent Order afforded Debtors the "full period" of the original Chapter 13 Plan, i.e., until December 31, 2011, to meet their financial obligations to T.D. Arguably, the parties intended the time period for Debtors to satisfy their obligations to be coextensive with the full period of their chapter 13 plan.  However, the Court does not rest its ruling on this issue since it finds that terms of the Modified Plan controls.

[3]     Indeed, during oral argument before the Bankruptcy Court, T.D.'s counsel acknowledged T.D.'s mistake by stating: "I think if the Bank had to do it over again, they would have objected

modify the terms of a confirmed Chapter 13 plan, in contravention of § 1327 and case law. See, e.g., In re Szostek, 886 F.2d 1405, 1413 (3d Cir. 1988) (holding a confirmed plan is binding upon a creditor and "is res judicata as to all issues decided or which could have been decided at the hearing on confirmation."); SLW Capital, LLC v. Mansaray-Ruffin, 530 F.3d 230, 238 (3d Cir. 2008) (emphasizing the res judicata effect of a confirmation order). Accordingly, the Bankruptcy Court clearly erred by finding that the Consent Order controls.[4]

Having determined that the terms of the Modified Plan supersede the Consent Order as they pertain to Debtor's home, T.D.'s request for stay relief based solely upon the Consent Order is not appropriate. Moreover, because T.D.'s request is based upon the Consent Order, the Court need not, as Debtors suggest, conduct an analysis under 11 U.S.C. § 362(d). On the other hand, the Modified Plan does not preclude T.D. from seeking stay relief pursuant to § 362, and as such, T.D. is free to do so before the Bankruptcy Court. See Resolution Trust Corp. v. Swedeland Dev. Group, 16 F.3d 552, 563 (3d Cir. 1994).

---

to the plan and at that time and brought this motion concurrently with the approval of the modified plan." TR. at T16:6-9.

[4]   While T.D., on this appeal, does not seek relief against the Advance Housemovers' assets, it is worth noting that the Court would come to a different result with respect to those assets. Initially, Debtors intended to move before the Bankruptcy Court to extend the automatic stay to the business assets. That motion was rendered moot by the parties' Consent Order. At this time, while Debtors may have some bases to argue that those business assets should be part of Debtors' estate, that determination was never made by the Bankruptcy Court, and as the Bankruptcy Court correctly noted, Debtors had agreed not to pursue the extension of the automatic stay to protect the business assets in exchange for T.D. not to pursue those assets for a period of time. The important distinction here is that the business assets were not a part of Debtors' bankruptcy estate. As such, according to the terms of the Consent Order, T.D. was free to pursue the assets to which T.D. is a secured creditor, after December 2011. As to Debtors' home, as the Court has stressed earlier, T.D. failed to object to the Modified Plan, and thus, its failure to do so prevents it from arguing now that the Plan's terms are subordinate to those of the Consent Order.

## IV. CONCLUSION

In light of forgoing reasons, this Court finds that the Bankruptcy Court committed clear error by giving controlling effect to the terms of the Consent Order in granting T.D. request for stay relief with respect to Debtors' real property. In making this determination, the Court does not decide on the issue of whether T.D. may ultimately be entitled to stay relief pursuant to 11 U.S.C. § 362(d). Accordingly, this Court **VACATES** the Bankruptcy Court's Order dated June 28, 2012.


DATED: March 8, 2013               /s/     Freda L. Wolfson
                                   Freda L. Wolfson
                                   United States District Judge